Good morning. Rob Harley for Appellant. Appellant requests remand for resentencing due to two procedural errors. First error was the three criminal history points for each San Bernardino excuse me, Santa Barbara County felony conviction. The second procedural error was three criminal history points being awarded for fixing appellants found in date pursuant to 1326 on a date after his two Santa Barbara County felony convictions. And as far as the third assignment of error, we're conceding that. Case law is against us. Guideline commentary is also against us. So I'm just going to be talking about the first two assignments of error. In regards to the three point assignment of criminal history points to the two separate San Bernardino County convictions, I would urge the court to consider the fact when you consider everything involved, it's a de facto consolidation for sentencing. The sentencing took place in Santa Barbara County the same day, same time, same court, same judge, same hearing. Well now, if you were, if this had happened, if you were to be sentenced after the 2007 amendments, you wouldn't even need to be arguing because they would be imposed on the same day. So I guess the question that I have is, do the 2007 amendments affect the rules that we would apply in terms of determining whether they were related convictions? Well, obviously, if I could see that, I'd lose. So, no, I don't think they do apply. No, no, you want the 2007. I'm sorry, what? You want the 2007 amendment, which says that if the sentences are imposed on the same day, then they're related. So they don't count twice. Okay. I misunderstood the court. Okay. But yes, I would certainly argue that. I don't recall the date of the argument sentencing, but obviously we do benefit by a sentencing rule that occurs subsequent to the sentencing date, which benefits us. But even assuming back then that the sentencing date, I believe October 1, 2007, considering everything that took place at the same time and the law existing back at the sentencing date when this was initially argued down below in the district court, I would say even in spite of the fact that there's no formal consolidation motion, the dockets and files maintain separate numbers, that given the overall circumstances that they were, in effect, amounted to a consolidation for sentencing. Even though the crimes occurred widely separated in time were different kinds of crimes and were not part of a common criminal enterprise or common criminal activity. As far as that's concerned, I agree. They are widely separated and there's no common scheme. They might be the same class of crime, according to California courts, that could have been consolidated. However, I don't think that's the analysis. I think the analysis is what went on in the Santa Barbara County Court below when everything was conducted at the same time, the same place, and the only thing that was lacking was a failure of a formal consolidation order and a consolidation motion being made by either one of the parties incorporating one of the numbers into another number in that Santa Barbara County Superior Court proceeding. So I think we can consider all the factors. I think the three-point error for two separate, excuse me, I keep on saying San Bernardino County. That's where he was initially, excuse me, subsequently found in Santa Barbara County felony convictions. I think he should have been awarded only one free point. Moving on to the second. On the second issue, in the plea agreement at page 77 of the excerpts, towards the bottom of the page, the defendant stipulates that immigration authorities found defendant in San Bernardino County. You get San Bernardino County this time. On or about April 23, 2007. Ordinarily, a plea agreement establishes the facts, and factually, the defendant can't go behind those. Why isn't that the date in this case? End of story. Well, I would argue the on or about April 23, 2007 language means it's not meant to be exact date number one. Number two, as far as pleading out to a factual basis, the found in date is just mere surplusage. It's not an element of any 1326 violation. But it's part of the factual predicate for the crime. I mean, when someone pleads, they describe facts that aren't, strictly speaking, part of the. . . I can see that, yes. You don't just say, I plead to this crime. You have to describe the facts, what happened, why it is you're pleading. And so normally, you're bound by all that description, too. You know, I'm a burglar, and I entered by the side window. You can't come back and say, no, no, I really didn't mean the side window. I meant, you know, through the garage. I agree. The only distinction I can make is the on or about language. And then further on in that plea agreement, it does say. . . But you're looking for a date that is not, you know, two or three days from on or about, because we do have cases in different contexts that on or about has to be relatively close. And you're looking for a date that's, you know, a year, year and a half different from this. I understand. Okay. I can see that. But I think when you look at page 84, the defendant signs that, and he reserves the right to appeal the calculation of his criminal history category. You know, I think it's somewhat. . . Well, that's right, but it doesn't mean he gets to win. It means that he gets to appeal it. So we're not kicking it out on jurisdictional grounds, but I don't understand what that reservation does in terms of the fact of the date of being found in. Well, I mean, his attorney and he are arguing down below, after they sign this document, the same document your book is in on, they raise these very issues down below. So when they sign this document, I'm assuming they had a good faith belief that they could still raise this issue when it came time for sentencing, assuming the PSR tried to assess him with the three points for his criminal history. And he's got an attorney down there below advising him to take this deal. And then it's contained in our excerpts of record. The attorney's filing a sentencing position, raising these very issues. I'm trying to re-litigate up here. So I think we can assume that he's looking at his attorney and he's getting advised, hey, can I raise some of these issues at sentencing? And he is advised, yes, it's permissible. The attorney raised the issue. And also, I mean, when you look at the information, that it's a charging document. There's no found in dating alleging the information. So I think when you consider all the surrounding circumstances, there was a good faith belief both by Mr. Lomeli-Menses and his counsel down below that they could litigate this after they signed the plea agreement. I think it's not entirely unreasonable to suggest that it is a valid issue to be raised in appeal and heard on appeal as well as decided on appeal. So I don't think the fact that he sort of admits to a collateral issue, i.e., a specific on or about found in a date precludes him from raising this on appeal when we're trying to diminish his criminal history points. And other than that, I'm prepared to submit unless the Court has additional questions. Thank you. May it please the Court, Jerry Benke for the United States. Addressing first the issue of whether or not the Santa Barbara convictions were related for purposes of calculating criminal history, on that point I first want to address the question that was raised by Judge Wardlaw regarding the applicability of the 2007 amendments. In this case, a defendant was sentenced in October 2007 prior to the applicable date of the November 1, 2007 amendments. And in this court, in the case United States v. Marler, addressed whether or not the November 1, 2007 amendment had issued here applies retroactively. And this Court found that it does not. The Court ruled in the Marler or discussed in the Marler case the 2007 amendment and found that the amendment was, in fact, a substantive amendment to the guideline. Therefore, in reviewing a pre-amendment sentence on appeal, the case has to be analyzed under the guidelines that were in effect at the time of sentencing. So if he had delayed his sentence by a month, he could have not had the two convictions counted? Yes, Your Honor. Given the timing of events, I believe Your Honor is correct. If the sentencing would have occurred a month later, the new guidelines would have been in effect and the Court would not have been required to engage in the balancing that the Court did undertake in this case. Given the fact that the sentencing occurred on the same day, that would have ended the issue. Yes, you are correct. However, at the time that the sentencing did occur in this case, while the Asbury Court set forth several factors that are to be considered in deciding whether or not to treat two convictions as being related, the ultimate goal that the sentencing court is attempting to reach is deciding whether or not for purposes of criminal history calculation, for fairness purposes, and for purposes of deciding how serious a person's criminal background is, should the two offenses be treated as separately or not. One of the ways that courts engage in that is looking at how the lower court treated the prior offenses. And in this case, while a lot of the Asbury factors are met, the sentencing occurred on the same day in the same court and the sentences were concurrent. After carefully balancing all of the facts and circumstances, including the disparate nature of the offense, the long time period between the two offenses, Judge Larson ultimately decided that the two offenses are not in fact related and they should be treated separately. And he also acknowledged in weighing and considering these factors that there are a multitude of reasons why a trial court might impose concurrent sentences like they did in this case. And let me just ask you one other question about that. I'm sort of still thinking about the 2007 amendments. Those amendments would have permitted the trial court to count them as two or to depart upwardly, even if there was a sentencing on the same day, if the court went through a slightly different analysis but having to do with whether it underrepresents the criminal history. So it wouldn't have necessarily been to his benefit in the bottom line. Yes, Your Honor, that is correct. In deciding whether or not the sentences were related and adding up the numbers, the court would have been obligated to find them related. However, the court would have still been free to decide that that then underrepresents the seriousness of his criminal history and the court could have departed upward. And ended up in the same place. Yes, Your Honor. So it was a potential but not necessary benefit. Yes, Your Honor. Ultimately, it may not have in fact benefited the defendant. And in this particular case, the record shows that Judge Larson did not only on this issue but also on the second issue regarding the found-in date. He didn't simply engage in an exercise of adding up the numbers and coming up with a range. He did weigh and consider the facts and circumstances of the defendant's background in trying to fashion a sentence that he believed was reasonable. And ultimately, even though he found that legally the defendant was bound to the found-in date that he stipulated to at his change of plea and in the plea agreement, Judge Larson determined that for fairness purposes, a downward departure would be appropriate so that the defendant wouldn't suffer the consequences of the additional three points resulting from that found-in date. So here on both points, you know, Judge Larson did engage in a very careful analysis of the defendant's background and the nature of his prior convictions. And we have an individual who, at the time he came before the court for sentencing, had suffered five prior felony convictions. And in weighing all of the facts and circumstances on all of these issues, Judge Larson ultimately sentenced him based on a criminal history Category 5. Under the Asbury test, you know, the government believes that the facts and circumstances of the prior convictions do justify the finding by the trial court that the prior convictions from Santa Barbara were not related. The government also believes that the trial court was correct in finding that the defendant is bound by the found-in date that he stipulated to in the plea agreement, notwithstanding the fact that, as defense counsel pointed out at sentencing, after receiving the PSR and seeing the criminal history calculation, he then realized it would be more advantageous for the defendant to argue for the later found-in date. He was bound by what they stipulated to at the change-of-plea hearing. As a result, the government does believe that the sentence imposed in this case by Judge Larson was the fair and correct sentence, and it should be affirmed. Unless the Court has any additional questions, I would submit. Let me ask you this. How did that confusion of names come about, the spelling of his last name? I don't know how the name became confused like that. The record simply shows that at the time that the immigration authorities placed the initial detainer on the defendant, they were placing a detainer on a completely different name. I can't recall off the top of my head now what that name was, but it was known. Juan Jose Meneses. Yes, that's correct, Juan Jose Meneses. So is that the defendant's date of birth, 10-29-1968? I believe it is the correct date of birth, Your Honor. And this is file number A-9-2-0-6-7-8-6-9? Yes, I believe that is the correct date file number. So was he using an alias, or what happened? I don't know for sure. Any comments on that point would be speculative based on how these cases generally come to the attention of INS. So I wouldn't want to comment on that unless the Court wanted me to. But on that point, even if the Court does not agree that the defendant stipulated that the found in date and that makes this issue moot for purposes of disappeal, in determining the found in date, the issue is not just when someone is brought to the attention of INS, but when you look at the discussion that this Court engaged in in Hernandez and the Guzman case, what we're looking for is when INS becomes aware of the person and when INS does in fact determine that the person is a deportable alien. In this case, at the time the detainer is issued, they had an A-file number and a different name for an individual. So it does appear just from looking at the detainer that further investigation was warranted at that point to decide if the person named on the detainer did in fact match the A-file number that INS had. Once they did make that determination, they did know that the defendant was a deportable alien, and at that point he was found. Government believes that that occurred in April of 2007. But as I had indicated earlier and as the record shows, Judge Larson found that that brings about a potentially unfair result in sentencing, because if INS had gone out and interviewed this individual sooner, the three points would not have been assessed. And Judge Larson did ultimately give him the benefit of that doubt. Well, that information I read to you that had the incorrect name, doesn't that have a different found-in date? The detainer, are you referring to the detainer date? Yes, Your Honor. The defense's position is that the date INS lodged the detainer with the Santa Barbara County Jail, that that should be the found-in date. The government believes that the found-in date is the later date in April 2007, which is when an INS official actually interviewed the defendant and determined that he is in fact the alien covered by that A file and that he was a deportable alien. So because the INS made a mistake, he's got to suffer for it? Well, I don't know if INS is the one that made the mistake. Well, somebody made it. Somebody from the government made a mistake. Potentially. Or it could be, as Judge Graber pointed out, that when the defendant was arrested in the Santa Barbara case, he was using this alias. And INS didn't figure out who he truly was until they actually pulled the A file and went down. But they have the A file number is his. Isn't that what you just told me? Yes, it is, Your Honor. As it turns out, the individual that they put the detainer on was in fact the defendant, a deportable alien. Another defendant? No, no, this defendant. This defendant. Yes, Your Honor. So why shouldn't he get the benefit of that earlier date? Well, legally, he doesn't get the benefit of that date because there was question as to whether or not he was a deportable alien. INS resolved that issue when they went out and interviewed him and realized that the individual in custody in Santa Barbara was, in fact, Hugo Lomele Mences and that he was, in fact, a deportable alien. That didn't occur until April 2007. And in any event, for purposes of sentencing in this case, the defendant ultimately didn't suffer the consequences of the later found indictments. As I indicated, he should have been sentenced if you just add up the numbers based on a criminal history Category 6. But Judge Larson found that it was merely fortuitous that INS took until April 2007 to figure out who they had in or who Santa Barbara had in custody. And as a result, Judge Larson departed downward to a Category 5 to give him the benefit of that doubt. So legally, if you just add up the numbers, he would be a Category 6, but he ultimately was not sentenced at that level. Thank you, Your Honor. Any rebuttal? Yes, I'm looking at the form I-247. It was filed pursuant to Code of Federal Regulations 287.7 and Excerpt 105. And that looks like a pretty official-looking document. I can see it has the wrong name, no question about it, but it does have the right date of birth, the right nationality, the right file number. And I'm presuming before an INS agent or an ICE agent puts this detainer on somebody notifying the California Department of Corrections or any other local law enforcement agency that they want this gentleman or they want to be notified 30 days before release, somebody has developed some pretty strong evidence. All it says is investigation. There are a lot of other boxes to check, but it says an investigation has been initiated to determine whether the person is subject to removal. They haven't checked the boxes that say there's a notice to appear, which would show that they'd already made that determination, or other options that similarly would have shown that that was a final determination. Well, at that point in time, the investigation has developed enough evidence that they know it's the right date of birth, they know it's the right nationality, they have the right file number, and I'm sure, and it's not in evidence, but there are fingerprints, you know, in order to alert them. That's how these people are red flagged in the county jails throughout the state of California. So they have pretty strong evidence that they got the right guy. The fact that there happens to be the wrong name up there and we have no idea who's responsible for the wrong name. It could be a government mistake. It could be a use of an alias. It could be an innocent mistake. I don't think that's relevant when they have such a strong case that they, even though there might be some investigation necessary to make a final determination beyond a reasonable doubt that this is the right guy, there's certainly enough evidence out there to cause an ICE agent to put this detainer on this person, alerting all local law enforcement, before you release this gentleman, please notify us. So even though they do happen to use the word investigation as that is checked, that's enough to alert anybody in California that before we release this gentleman, we have to notify ICE for him to come there and pick them up. And that's the wording in any I-247 form that's filed and lodged against a gentleman who happens to find himself in jail in a county where ICE files this detainer. So, and then getting back to... Well, we're told that the judge gave a break. So even if it's error on the found-in date, he nonetheless deducted, I guess, three points. So would we say it was nevertheless a reasonable sentence? Okay. Assuming that's correct, I would argue, and I realize there's a footnote in Cantrell that indicates something to that effect. And again, I haven't looked at CARTI recently, but that's the en banc decision, I'm sure the Court is aware of, that sort of updates what was spelled out in Cantrell. And I don't recall seeing a footnote or any language in CARTI that indicates that this type of error is subject to harmless error. If it's a procedural error, that's a starting point. You still have to figure out the correct guideline to depart from. That's correct. And if it's incorrect, regardless of whether it's harmless error, my position is, based on CARTI, not necessarily Cantrell, because I can see there is a footnote down there, but as far as CARTI is concerned, they don't give the appellate court that option saying, well, it's harmless error. It's procedural error, boom, it gets remanded for resentencing. You do have to correctly calculate the guidelines. So this case does seem to come down to whether we're bound by the plea agreement or whether we apply the found-in rule, which equates to discovery of the alien. That's right. And then perhaps if the court knew that the found-in date should have been the earlier date, which knocks three points off his criminal history category and gets him down from a level 6 to a level 5, perhaps the court would have gone even further and given him a better break. We don't know. That's a further reason why perhaps this thing should be remanded for resentencing, simply because of this, quote, procedural error, as that term is defined in CARTI. I'm going to mix up CARTI and Cantrell, but it's CARTI is the more recent one. CARTI is the recent one. Yes. So rather than deciding it's harmless error up here, I think the best thing to do based on CARTI is send him back down to remand and then let the parties below work it out. I was not one of the parties. The prosecutor was, and perhaps sending back the same judge and the same defense counsel could iron some of these things out that we find ourselves wrestling with up here. And I give you the benefit of the new guidelines, too. Well, I don't know whether they really help or hurt. I don't know. And quite frankly, I haven't really thought that through. But, yeah, that might be an additional reason for sending him back down. Thanks, Your Honor. I appreciate that. Thanks for the lifeline. Yeah. I wish the guidelines would just disappear. I'm not going to say anything else. Thank you. Thank you. They're unconstitutional, but we still worship them. Okay, that's it, then, on all matters. No, we have the Mediterranean. Oh, okay. Yeah, we put that one back on. Oh, yeah, here it is. We're back on. We're going to take a Mediterranean cruise now. I wish. Okay.
judges: Pregerson, Graber, Wardlaw